IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     Plaintiff,

vs.                                                    No. CR 95-320JP

RUBEN RENTERIA, SR.,

     Defendant.

## <u>MEMORANDUM OPINION</u>

This Memorandum Opinion concerns the resentencing of Ruben Renteria, Sr.  It involves basic issues of justice and fairness.

### BACKGROUND.

### *United States v. Gabriel Rodriguez-Aguirre, et al., No. CR 92-486JC*

On October 20, 1992, Ruben Renteria, Sr. was indicted, along with twenty-one co-defendants, in an indictment that charged Mr. Renteria with involvement in a large drug conspiracy.

On October 21, 1992, Mr. Renteria was arrested and taken into federal custody.

Mr. Renteria filed a motion to suppress evidence that had been seized at his residence on the ground that he had not consented to a search of his premises.  On December 22, 1993, then Chief Judge John Edwards Conway held a hearing on Mr. Renteria's suppression motion.  During the hearing, Mr. Renteria testified under oath that he had not signed the name "Ruben Renteria" that appeared on a consent to search form.  At the same hearing, Mr. Renteria's son, Ruben Renteria, Jr., testified under oath that the signature on the consent form was his.  Mr. Renteria's attorney withdrew the motion to suppress before Judge Conway ruled on the motion.

Consequently, Mr. Renteria's testimony at the hearing on his motion to suppress had no impact whatsoever on his prosecution in No. CR 92-486JC. It did not result in the inadmissability at trial of any of the government's evidence in No. CR 92-486JC.

On July 12, 1994, a jury found that Ruben Renteria, Sr. was not guilty of the charge brought against him in No. CR 92-486JC. Mr. Renteria had been held in federal pretrial custody in No. CR 92-486JC a total of 324 days.[1]

### *United States v. Ruben Renteria, Sr. and Ruben Renteria, Jr., No. CR 95-320JP*

On June 8, 1995 a Grand Jury indicted Ruben Renteria, Sr. and Ruben Renteria, Jr. on charges that they had testified falsely at the December 22, 1993 suppression hearing in No. CR 92-486JC. The indictment charged that Ruben Renteria, Sr. gave the following false testimony, under oath, in violation of 18 U.S.C. Sec. 1623:

> Q. You've seen what is marked Government Exhibit 1 in front of you. Is that your Signature there?
> A. No.
> Q. Okay. Did you sign that document?
> A. No.
> Q. So it's your testimony you never saw that form?
> A. Huh-uh.
> Q. And you never signed it?
> A. No.

On November 15, 1995, a jury convicted Ruben Renteria, Sr. and Ruben Renteria, Jr. of the offense of giving false testimony under oath.

At a sentencing hearing on March 6, 1996, this Court sentenced Ruben Renteria, Sr. to 15 months imprisonment, to be followed by 2 years of supervised release. The sentence was

---

[1] On September 9, 1993, Mr. Renteria was released under strict conditions of pretrial supervision after spending 324 days in jail in federal custody.

imposed, in the alternative, under both United States Sentencing Guideline  (U.S.S.G.)  § 2J1.3(a) and  U.S.S.G. §2J1.3(c)(1).  The alternative sentence under U.S.S.G. § 2J1.3(c)(1) involved a downward departure under U.S.S.G. § 5K2.0 and 18 U.S.C. § 3553(b) to the same sentence that was imposed under U.S.S.G. § 2J1.3(a).

On  March 15, 1996, Ruben Renteria, Sr. appealed his conviction and on April 3, 1996, the government appealed the alternative sentences that had been imposed on Ruben Renteria, Sr.

On April 11, 1996, this Court filed a Memorandum Opinion, *United States v. Renteria, Sr.,* 925 F. Supp. 772 (D.N.M. 1996).

On March 16, 1998, almost two years later, the United States Court of Appeals for the Tenth Circuit issued an opinion affirming Ruben Renteria, Sr.'s conviction, but vacating the alternative sentences imposed and remanding for further consideration and resentencing "in  light of the facts and circumstances as they exist at the time of resentencing."  *United States v. Renteria, Sr.,* 138 F.3d 1328, 1335 (10th Cir. 1998).  By the time the United States Court of Appeals for the Tenth Circuit issued its opinion on March 16, 1998, Ruben Renteria, Sr. had already served the entirety of his 15 month sentence of imprisonment, plus part of his 2 year term of supervised release.

This Court gave notice of a resentencing hearing of both Ruben Renteria, Sr. and Ruben Renteria, Jr. on April 23, 1998.  The hearing was vacated at the request of the parties and rescheduled on December 28, 1998.

Defendant Ruben Renteria, Jr. filed a motion to vacate the December 28, 1998 sentencing hearing.  The Court granted the motion and permitted the parties to file additional motions.

On January 19, 1999, Ruben Renteria, Sr. filed a motion for downward departure to which

the government responded on February 23, 1999.

On March 10, 1999, Ruben Renteria, Sr. filed a memorandum in support of his motion for downward departure.

On May 17, 1999, the Court held a resentencing hearing at which the Court orally announced a proposed sentence of 60 months imprisonment with credit for 15 months already served in this case, No. CR 95-320JP, and for the 324 days that Mr. Renteria had been held in federal pretrial custody in cause No. CR 92-486JC. At the conclusion of the May 17, 1999 hearing, the Court informed Mr. Renteria, Sr. that he could appeal his sentence following entry of a written judgment.

Nevertheless, on June 2, 1999, prior to the entry of a judgment setting forth the sentence that had been imposed orally at the hearing on May 17, 1999, Ruben Renteria, Sr. filed a notice of appeal.

On July 13, 1999, the Court filed an amended judgment setting forth the sentence that had been imposed orally at the hearing on May 17, 1999.[2]

On September 9, 1999, the Court entered an order appointing Joseph Gandert, Assistant Federal Public Defender, as new counsel for Ruben Renteria, Sr.

On October 29, 1999, the United States Court of Appeals for the Tenth Circuit entered an order which stated that Mr. Renteria's June 2, 1999 appeal was abated and "partially remanded to the district court for the limited purpose of holding an evidentiary hearing concerning the drug quantity attributable to Mr. Renteria, Sr., and for re-sentencing."

---

[2] The July 19, 1999 judgment is described as amended only because it was entered upon remand from the Court of Appeals. (Doc. No. 127).

On November 12, 1999, the Court gave notice of an evidentiary hearing on the resentencing of Ruben Renteria, Sr. to be held December 30, 1999.

On December 10, 1999, new counsel for Ruben Renteria, Sr. filed a motion for downward departure and a resentencing memorandum to which the government filed a response on December 21, 1999.

On December 30, 1999, the Court held a resentencing hearing at which it expected the government to present testimony as to the quantity of contraband attributable to Mr. Renteria. Instead of presenting witnesses, counsel for the government stated that the government would rely on transcripts of witnesses' testimony during the trial in No. CR 92-486JC.  The Court explained that since a different judge presided at the trial in No. CR 92-486JC,  the Court could not assess the credibility of the witnesses who had testified in that case.  Counsel for Mr. Renteria argued that the jury in No. CR 92-486JC found the government's witnesses, especially Alicia Armendariz, the government's main witness against Ruben Renteria, Sr., unworthy of belief.  The Court allowed briefing on the question of whether it was proper to decide the contested issue of the quantity of drugs attributable to Mr. Renteria by reading transcripts of testimony.

On January 10, 2000 the government filed a brief in support of its reliance upon trial transcripts at a resentencing hearing.

On January 11, 2000 Ruben Renteria, Sr. filed addendum to his motion for downward departure.

On January 12, 2000 the government filed a memorandum in opposition to Mr. Renteria's addendum.

The Court scheduled a resentencing hearing on June 22, 2000, but on June 19, 2000, three days before the scheduled hearing, the government filed a motion to continue the resentencing hearing, which then was rescheduled on August 30, 2000.

On  August 30, 2000, after commencing the resentencing hearing, the Court asked the parties to submit briefing on a new issue that might affect Mr. Renteria's motion for downward departure.

On September 11, 2000 Mr. Renteria filed a  supplemental memorandum and motion for downward departure to which the government responded on September 15, 2000.

On October 4, 2000 the Court held a final evidentiary hearing on the sentencing of Ruben Renteria, Sr. and pronounced alternative sentences under U.S.S.G. § 2J1.3(c)(1).

### RESENTENCING UNDER U.S.S.G. SECTION 2J1.3(c).

### Mandates of the Court of Appeals

Although in 1996 this Court had imposed a sentence, in the alternative, under U.S.S.G. § 2J1.3(c) at the same time it imposed a sentence under U.S.S.G. § 2J1.3(a), the Court of Appeals declined to review the alternative § 2J1.3(c)(1) sentence and also declined to order the district court to sentence Mr. Renteria to 60 months in prison, as the government argued it should. Instead, the Court of Appeals remanded with instructions that the district court sentence Mr. Renteria "in light of the facts and circumstances as they exist at the time of resentencing."  This Court understands the Court of Appeals' directive to mean that because two years had elapsed since the original alternative sentences had been imposed, circumstances may have changed in the interim and it was appropriate to take changed circumstances into account at the time of resentencing.  In fact, a number of things did change in the interim.

In addition, in its order filed October 29, 1999 the United States Court of Appeals for the Tenth Circuit stated "This appeal is hereby abated and partially remanded to the district court for the limited purpose of holding an evidentiary hearing concerning the drug quantity attributable to Mr. Renteria, Sr. and for re-sentencing."

**Findings Regarding Lack of Proof of Drug-Quantity Attributable to Ruben Renteria, Sr.**

Counsel for the government declined the Court's invitations to present witnesses, in person, to testify about quantities of drugs involved in the conspiracy that were attributable to Ruben Renteria, Sr.  The government relied primarily on the testimony of witness Alicia Armendariz given in CR 92-486JC at the original trial in the drug conspiracy case.  Ms. Armendariz testified that she was present on two occasions with Ruben Renteria, Sr. when they received marijuana carried into the United States from the Republic of Mexico by "back-packers." (Tr. 1192-3).  The "typical" backpacking operation involved three to six people carrying marijuana in backpacks (Tr. 1195-96, 1034).  The total amount brought by backpackers on a typical backpacking trip varied from 180 pounds to 400 to 500 pounds of marijuana.  (Tr. 1034, 1196).  Ms. Armendariz did not testify as to the specific quantities involved in the two trips that she and Ruben Renteria, Sr. together met.  In addition, Ms. Armendariz testified that she observed marijuana being packaged at Mr. Renteria's residence three to four times (Tr. 1037) but she never quantified the amounts being packaged there and did not explain whether the marijuana being packaged at his home was part of the marijuana brought by the backpackers that she and Ruben Renteria, Sr. had met.   Consequently, the Court found that the appropriate quantity of marijuana attributable to Ruben Renteria, Sr. under the testimony of Alicia Armendariz, if believed, was 360 pounds of marijuana.   This was determined by multiplying the minimum total amount, 180

7

pounds,  brought during a "typical" back-packing trip by the two times that Ms. Armendariz observed Ruben Renteria, Sr. being present to meet back-packers.

The Jury that acquitted Ruben Renteria, Sr. apparently thought that Ms. Armendariz' testimony was not credible.  Although the Court was not given an opportunity to observe Ms. Armendariz testify in person, the Court is convinced from reading the transcript of her trial testimony that the jury was correct – she lacked credibility.

The transcript of Ms. Armendariz' trial testimony reflects the following regarding her credibility.  She was born in Manhattan, Kansas where she graduated high school in 1985.  She started using marijuana at the age of 14 (Tr. 1010) and thereafter has used many different drugs throughout her life.   After graduating high school she moved with her parents to Deming, New Mexico (Tr. 1011) where she met the ring leader of the drug conspiracy, Gabriel Rodriguez Aguirre, while she was working at La Fonda Restaurant as a waitress.  (Tr. 1012-13).  Ms. Armendariz was still a teenager when she met Gabriel Aguirre (Tr. 1149) who at the time was 41, more than twice Ms. Armendariz' age (Tr. 1155).  Ms. Armendariz testified she became interested in Gabriel Aguirre because "he was just smiling, happy" and because he left her a $100 tip the first time she waited on him.   (Tr. 1151, 1152).  She then went to Gabriel Aguirre's residence where "he let me roll up some joints, and we got high..." (Tr. 1014) and she continued going to his residence "because I was enticed by the weed, the coke and the company." (Tr. 1016).  On the fourth day of visiting Gabriel Aguirre's residence she became "intimately involved"  with him (Tr. 1016) and soon thereafter moved into Gabriel Aguirre's residence with him (Tr. 1018).  On occasions when Gabriel Aguirre was away from his residence that he shared with Ms. Armendariz, Ms. Armendariz had sexual relations with at least four other men (Tr. 1153-54)

including Ramon Aguirre, one of Gabriel Aguirre's sons. (Tr. 1139).

Over time, Ms. Armendariz used a great variety of drugs in addition to marijuana including cocaine (Tr. 1010, 1168), heroin (Tr. 1110, 1156, 1168), methamphetamines (Tr. 1163, 1168), and "acid" -LSD (Tr. 1168). She was convicted of a felony crime of conspiracy to sell marijuana in the State of Kansas in 1989 (Tr. 1011). Her family had been involved in a large-scale marijuana plantation in Kansas and members of her family had been arrested in "the biggest marijuana case ever in the state of Kansas." Ms. Armendariz knew how to prepare marijuana for shipment and personally prepared it regularly; in addition she was familiar with how marijuana was cultivated (Tr. 1101). Ms. Armendariz had personally participated in selling marijuana (Tr. 1064). On a trip to the Republic of Mexico with Gabriel Aguirre, Ms. Armendariz carried a 9mm. weapon and cocaine (Tr. 1100). The person to whom Ms. Armendariz was married at the time of her testimony to the jury at the drug conspiracy trial had been in the drug business and was also a convicted drug dealer (Tr. 1113-14).

In regard to compensation by the government, Ms. Armendariz testified to the jury as follows:

"Q. How much money have they paid you for your testimony?

 A. $9,400."

(Tr. 1126).

The $9,400 was given to Ms. Armendariz in cash (Tr. 1126) and besides that cash amount, the government spent another $22,000 on Ms. Armendariz' food and lodging (Tr. 1126-27).

After spending a brief period in the witness protection program during which the

9

government paid $22,000 for her food and lodging and gave her $9,400 in cash, Ms. Armendariz was "thrown off" the witness protection program for using drugs (Tr. 1127).

Ms. Armendariz admitted to having "misled" a prospective employer on an employment application. (Tr. 1142).

In view of this, the Court declines to accept as credible evidence of drug quantities attributable to Mr. Renteria the proffered transcript testimony of Alicia Armendariz.  The Court also concludes that the government has not proved any reasonably foreseeable drug quantity through other relevant conduct.[3]

The government failed to prove by a preponderance of evidence a specific quantity of drugs attributable to Ruben Renteria, Sr.

**ALTERNATIVE SENTENCES UNDER U.S.S.G. § 2J1.3(c).**

In view of this Court's conclusion that the government failed to meet its burden of proving a quantity of drugs attributable to Mr. Renteria, resentencing under U.S.S.G. § 2J1.3(c) as the Court of Appeals required, presented difficulties.  In resentencing Mr. Renteria under U.S.S.G. § 2J1.3(c), this Court has taken alternative approaches in arriving, once more, at a sentence of 15 months imprisonment and 2 years of supervised release.

**The First Alternative:  Applying U.S.S.G § 2J1.3(c), Without a Downward Departure.**

---

[3] The government first took the position that "the Aguirre organizations's criminal activity as a whole was within the scope of defendant's criminal agreement, and that the organizations's criminal activity as a whole was reasonably foreseeable to him."  (Doc. No. 141 at 4) (filed December 21, 1999, citing testimony as to quantity of drugs).  A few days later, in contrast, the government declared that "The Court need not, and should not, make a separate determination as to the scope of defendant Renteria's criminal agreement with the other Rodriguez-Aguirre conspirators or what was reasonably foreseeable to him."  (Doc. No. 143 at 14) (filed January 10, 2000).

U.S.S.G. § 2J1.3(c)(1) requires the application of U.S.S.G. § 2X3.1 (accessory after the fact) if the defendant's perjury was "in respect to a criminal offense."   U.S.S.G. § 2X3.1 states that the base offense level under that section should be "6 levels lower than the offense level for the underlying offense. . ."   Application Note 1 to U.S.S.G. § 2X3.1 defines "underlying offense" as "the offense as to which the defendant is convicted of being an accessory."   Obviously, this does not fit Mr. Renteria who was not "convicted of being an accessory."   Indeed, the Court of Appeals for the Tenth Circuit has ruled that when U.S.S.G. § 2X3.1 is applied by way of the cross-reference in U.S.S.G. § 2J1.3(c), the Application Notes are not relevant.   <u>See</u> <u>United States v. Glover</u>, 52 F.3d 283, 285 (10th Cir. 1995).

The section of the United States Sentencing Guidelines that relates to "the underlying offense" referred to in U.S.S.G. § 2X3.1 appears to be U.S.S.G. § 2D1.1(a)(3) which directs the Court to offense levels specified in the Drug Quantity Table of the Guidelines Manual.   The Drug Quantity Table appears in Section 2D1.1(c).   However, it seems questionable that the Drug Quantity Table would apply in the face of the Court's finding that the government failed to prove any drug quantity attributable to Mr. Renteria.   The only sub-paragraph that could conceivably apply under this finding would be U.S.S. G. § 2D.1(c)(17), which describes the lowest quantities of various drugs in the Drug Quantity Table and refers to "Less than 250G of Marihuana."   An offense level 6 attaches to U.S.S.G. § 2D1.1(c)(17).   An offense level of 6 with Mr. Renteria's criminal history category of III establishes a guideline imprisonment range of 0-6 months, the upper limit of which is much shorter than the time Mr. Renteria has already served in federal prison.   Hence, it seems illogical at this point to apply the guidelines in this manner, i.e., starting with Section 2J1.3(c) and following them through Section 2X3.1 to Section 2D1.1(c)(17).   Under

these circumstances, another approach to fashioning the proper sentence would be to follow the direction of U.S.S.G. § 2X5.1 which states that if the offense is one "for which no guideline expressly has been promulgated, apply the most analogous offense guideline."  Where, as here, the failure to establish a drug quantity attributable to Mr. Renteria precludes application of U.S.S.G. § 2X3.1 to which U.S.S.G. § 2J1.3(c) refers, there appears to be no guideline expressly  promulgated to fit this situation.  It would then seem that the sentencing judge is led back to the basic guideline for perjury, U.S.S.G. § 2J1.3(a), as being "the most analogous offense guideline" to be used in sentencing under U.S.S.G. § 2J1.3(c).  Under this analysis, having come full circle, the base offense level is 12 as prescribed in U.S.S.G. § 2J1.3(a) and the sentencing guideline range again is 15-21 months.

### The Second Alternative:  Applying U.S.S.G. § 2J1.3(c), Using Drug Quantity Table, And Departing Downward.

At the hearing on October 4, 2000, the Court made a finding that, if the testimony of Alicia Armendariz must be believed, the appropriate quantity of marijuana attributable to Mr. Renteria under Ms. Armendariz' testimony would be 360 pounds or approximately 164 kilograms.  This would place the quantity attributable to Mr. Renteria under U.S.S.G. § 2D1.1(c)(7) which covers a range of  "At least 100 KG but less than 400 KG of Marihuana" and has an offense level of 26.  However, U.S.S.G. § 2X3.1 would then operate to reduce the offense level from 26 to level 20 because the base offense level under Section 2X3.1 is to be "6 levels lower than the offense level for the underlying offense. . ."  Offense level 20 is the level that the government contended during the October 4, 2000 hearing should apply, even if Mr. Renteria's sentence should be calculated based on the total quantity of all drugs in the conspiracy.  (Tr. 10/4/00 at 12-13; 26).

An offense level of 20 and a criminal history category of III result in a guideline

imprisonment range of 41 to 51 months.  It is appropriate to depart downward eight offense levels

to offense level 12 in order to reach the same sentence of 15 months imprisonment followed by 2

years of supervised release that was imposed under the first alternative.[4]

> U.S.S.G. § 5K2.0 states:
>
> Under 18 U.S.C. § 3553(b), the sentencing court may impose a sentence outside the range established by the applicable guidelines, if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."  Circumstances that may warrant departure from the guideline range pursuant to this provision cannot, by their very nature, be comprehensively listed and analyzed in advance.  The decision as to whether and to what extent departure is warranted rests with the sentencing court on a case-specific basis.

### COMBINATION OF FACTORS WARRANTING DOWNWARD DEPARTURE.

This Court found that there are mitigating circumstances of a kind or to a degree that were

not adequately taken into consideration by the Sentencing Commission in formulating the

guidelines that, in combination, should result in a sentence different from one that would

otherwise be described.  The mitigating circumstances are the following.

(1).  <u>Lack of Credit For Time Held in Custody</u>.

First, the United States Bureau of Prisons did not give Mr. Renteria credit against the 15-

month sentence of imprisonment that he served in this perjury case, No. CR 95-320JP, for the time

Mr. Renteria had served in federal pre-trial custody in the drug conspiracy case, No. CR 92-486JC,

in which he was not convicted of a crime, but in respect to which Mr. Renteria committed the

perjury.  This Court is now required to impose a sentence in this case, CR 95-320JP, based on

information in the record of CR 92-486JC.  Unquestionably, the Sentencing Commission did not

---

[4] A total offense level of 12 and a criminal history category III result in a guideline imprisonment range of 15 to 21 months.

take into consideration in formulating the guidelines a situation in which the length of a

defendant's sentence for perjury would be determined largely by the quantity of drugs involved in

a conspiracy in regard to which the defendant was found to be not guilty, but the defendant would

not be given credit against his perjury sentence for the time that he had already served in the drug

case, in which he was found to be innocent.  Clearly, the interest of justice dictates that Mr.

Renteria's sentence in this perjury case, which is dependent on the amount of drugs involved in

the conspiracy case, should be reduced by a downward departure to assure credit for the time Mr.

Renteria has already served in custody in the drug conspiracy case.

(2).    <u>Post Offense Rehabilitation</u>.

Second,[5] Mr. Renteria has demonstrated a significant change in his attitude and conduct for

the better since serving the 15-month period of imprisonment in this case.  Mr. Renteria served the

two-year term of supervised release in an exemplary manner and strictly complied with all

conditions that had been imposed.  He obtained employment at New Mexico State University and

has worked full-time in a good job.  His supervisors rate his work as "excellent."  His co-workers

hold him in high regard.  **Twenty-one** co-workers signed a letter to the Court regarding his good

work performance and attitude.  As of March 6, 1996, the date this Court sentenced Mr. Renteria

to 15 months imprisonment, the Presentence Report reflected that Mr. Renteria had not been

---

[5] At the sentencing hearing on October 4, 2000, this Court stated as the "second" ground for departing downward that the Sentencing Commission in formulating U.S.S.G. § 2J1.3(c) apparently did not take into account the highly unusual and unexpected situation that the sentence for a person convicted of perjury would be based on a criminal offense of which the perjurer had previously been found by a jury to be not guilty.  This Court, on reflection, is convinced that the law does not support this as a valid factor which alone, or in combination with other factors, would justify departing downward.  <u>See, e.g.</u>, U.S.S.G. § 2J1.3, Application Note 3; <u>United States v. Reilly</u>, 33 F.3d 1396, 1423 (3rd Cir. 1994).

employed for the past 16 years because of a claimed disability.  The Addendum to the Presentence

Report prepared during August 2000 prior to resentencing, reflects a remarkable change.  It states

that on July 8, 1997 Mr. Renteria was released from federal custody after serving the custodial

portion of his sentence and began his two-year term of supervised release.  This Addendum to the

Presentence Report further states "throughout his term of supervised release the defendant

maintained full-time employment as a construction laborer at New Mexico State University.

Records reflect he had no contact with law enforcement authorities throughout his term of

supervision.  His supervision was successfully terminated on July 17. 1999."  Under a section

entitled "Presentence Report Update" the United States Probation Office advised that Mr. Renteria

has continued to reside with his wife in Las Cruces, New Mexico since being released from prison

and has maintained full-time employment at New Mexico State University averaging 40 hours of

work per week.  In a June 20, 2000 letter, Mr. Renteria's work supervisor described both his job

attendance and his job skills as "excellent" and further reported that he got along well with his co-

workers.  There is one blemish on Mr. Renteria's record since he served his term of imprisonment

and the two years of supervised release.  On May 24, 2000 he was fined $25 for having been found

guilty of drinking in public.  Everything considered, it appears that Mr. Renteria has significantly

changed his life for the better since being sent to prison for 15 months during 1996 and 1997.

Standing alone, this remarkable post-conviction change in his attitude and conduct is not so

extraordinary as to remove Mr. Renteria's case from the heartland of cases.  Consequently, the

Court concluded that this factor, post-conviction rehabilitation, is insufficient, by itself, to justify a

downward departure.  However, the Court was convinced that Mr. Renteria's post-conviction

rehabilitation was genuine and very impressive and should be considered, along with other factors,

as justification for a large downward departure.

The Court of Appeals for the Tenth Circuit has recognized that the version of the Sentencing Guidelines applicable to this case takes into account "post-offense rehabilitative efforts." United States v. Roberts, No. 98-8037, 1999 WL 13073, **6 n. 3 (10th Cir. Jan. 14, 1999). As the Tenth Circuit has further observed, other Courts of Appeals have therefore construed post-conviction rehabilitation to be "an encouraged factor already taken into account by the Guidelines." Id. (citing cases referring to Koon v. United States, 518 U.S. 81, 95 (1996)). As a permissible factor for departure, post-conviction rehabilitation can be considered when it is present with a combination of other characteristics or circumstances "even though none of the characteristics or circumstances individually distinguishes the case." U.S.S.G. § 5K2.0 Commentary. Cf. United States v. Jones, 158 F.3d 492, 505 (10th Cir. 1998) (affirming district court's downward departure based on consideration of multiple factors since in the aggregate those factors supported departing downward, and equating rehabilitation with good work history and compliance with conditions of release).

(3).    Lack of Consideration of Severity of Perjury.

Third, the failure to account, in the sentencing guidelines, for the severity, or lack thereof, of Defendant's perjury, in combination with the first and second factors, warrants a substantial downward departure. See United States v. Sicken, 2000 WL 1153265 (10th Cir. Aug. 15, 2000).[6] In Sicken, The Tenth Circuit for the first time outlined the analysis in cases involving comparative

_____

[6] The Court of Appeals for the Tenth Circuit had not decided Sicken before the original sentence was imposed in 1996 or before the remand for resentencing in 1998. Hence, this third factor of the comparative severity of Mr. Renteria's perjury was not taken into account in making the downward departure at the time of the original sentencing.

severity of offense conduct.   After determining "whether the factual circumstances supporting a

departure are permissible departure factors," a court must define the heartland of cases for a

particular offense "whether by cases that fit within the heartland of cases or cases that are outside

of it." See Sicken, 2000 WL 1153265 at *5.  The precise contours of the heartland of perjury cases

need not be defined here by reference to those cases within it because this case so clearly falls

outside.  Apparently no reported cases have defined the boundary between the heartland of perjury

cases and those perjury cases that are atypically less severe in comparison.  However, it is difficult,

if not impossible, to imagine perjurous testimony milder in its effect and with less of an impact

than that given by Mr. Renteria.

Mr. Renteria's perjury was of essentially no consequence in the underlying case in which it

occurred, as I have already observed.  Renteria, 925 F. Supp. at 725-26.  It was committed during a

pretrial hearing before a trial judge who did not rely on the testimony.  In fact, before the trial

judge made any ruling, Mr. Renteria's counsel withdrew the motion to suppress in support of

which Mr. Renteria had offered his perjured testimony.  Mr. Renteria's perjury therefore had no

effect of the admissibility of evidence at the trial in the underlying case.  No judge or jury was ever

forced to choose between Mr. Renteria's perjurous testimony and other conflicting evidence.  No

significant government resources were expended as a result of the

perjury.[7]  I conclude that Mr. Renteria's conduct rests at the bottom of the scale of severity of

perjury offenses, well below the heartland of perjury cases.

Sicken also requires that the factual basis for a downward departure have support in the

---

[7] The government's expenditure of time and resources to try a defendant for perjury cannot
form the basis for an upward adjustment under U.S.S.G. § 2J1.3(b)(2), see Sinclair, 109 F.3d at
1539, and thus should not be considered when defining the heartland of perjury cases.

record.  See Sicken, 2000 WL 1153265 at *4.  Here that basis is a lack of effect from Mr.

Renteria's perjury.  At the October 4, 2000 hearing, the parties each admitted that Mr. Renteria's

perjury had no effect.  (See Tr. 10/4/00 at 21.)

Finally, Sicken also requires that the "degree" of downward departure be reasonable.  See

id.  Although the Tenth Circuit has expressed reservations about the extent of the previous

fourteen-level downward departure in the alternative sentence imposed under U.S.S.G. § 2J1.3(c),

on which it declined to pronounce judgment, for the reasons stated in United States v. Renteria,

Sr., supra, and in this Memorandum Opinion, I believe that the lesser downward departure of eight

offense levels announced on October 4, 2000 and here is reasonable.[8]

---

[8] During the October 4, 2000 hearing, the Court also mentioned a "fifth" factor which involved a comparison of the conduct of Mr. Renteria and President Clinton.  In United States v. Koon, supra at 106, the Supreme Court of the United States commented that a sentencing judge may consider an almost unlimited scope of factors in deciding whether to depart downward under U.S.S.G. § 5K2.0.  In view of that broad language in Koon, during the hearing on August 30, 2000, this Court asked the parties to brief whether something that had just arisen might properly be considered as an additional factor supporting Mr. Renteria's motion for downward departure.  That involved the publication in the press shortly before the August 30, 2000 hearing that President Clinton, through his legal counsel, was taking the position that disbarment as an attorney was too harsh of a punishment for testifying falsely in a civil action in federal court.  Counsel for Mr. Renteria then filed a supplemental memorandum and motion for downward departure which included this as an additional factor for downward departure under U.S.S.G. § 5K2.0.  At the resentencing on October 4, 2000, the Court did not rely on that as an additional factor supporting downward departure and has not done so in this Memorandum Opinion.  However, the Court made statements during the October 4, 2000 hearing that could reasonably have been understood to mean that the Court used this factor, in combination with the others, in determining the sentence imposed.  Initially, the Court stated "Now, it's my conclusion that this fifth factor probably does not present an independent basis for departing downward under Section 5K2.0.  Nonetheless, I believe it also, when considered with the other four factors, adds weight to the combination that justifies a downward departure."  (Tr. 10/4/00 at 22).  Later, during the sentencing hearing, counsel for the government stated that the government "objects to the Court placing any reliance at all on the comments that President Clinton's personal lawyers have made in a matter before the state courts in Arkansas."  (Tr. 10/4/00 at 29).  In response, the Court stated "Let me just observe that I did state earlier that I agreed with you that it does not present an independent ground for downward departure.  And I've not departed downward on that ground.  I also made clear that I felt that it was something that could add to the combination of factors, but I thought that the first factor that I announced alone was sufficient to justify the granting of the Motion for Downward Departure.  The first factor, plus the next three, two through four, I indicated in combination certainly justified granting the motion in (sic -- the correct word is "and") departing

***EXTENT OF DOWNWARD DEPARTURE***.

The Court of Appeals for the Tenth Circuit has repeatedly held that the extent of a downward departure under U.S.S.G. § 5K2.0 must be reasonable.  United States v. Smith, 133 F.3d 737, 751 (10th Cir. 1997); United States v. Collins, 122 F.3d 1297, 1308 (10th Cir. 1997); see also Sicken, supra at **4.  The departure at resentencing of eight offense levels from a total offense level of 20 represents, in terms of offense levels, a forty percent downward departure.  The

---

downward eight offense levels.  The fifth factor, involving the comparative false testimony of the President and Mr. Renteria, I did take into account somewhat as icing on the cake, but as being unnecessary for the ruling that I made.  So I will tell you clearly on the record that I am not relying on that to reach the conclusion that I reached." (Tr. 10/4/00 at 29-30).  Counsel for the government retorted "And if you're saying you did rely upon it I'm asking to say that you won't and that you shouldn't." (Tr. 10/4/00 at 30).  The Court concluded this dialogue by stating "No, I did take it into account, but did not rely on it.  I must be honest with you, I took it into account because I think it demonstrates how terribly unfair it is for the President's Department of Justice to be attempting to pillorize Mr. Renteria when the President, for similar conduct, or what is probably more egregious conduct in terms of its consequences, is claiming that the prospect of not being allowed to practice as an attorney in Arkansas is too harsh.  It's just terribly out of balance.  I don't see how I can ignore that.  But it doesn't affect the bottom line, the sentence that I'm imposing or the extent of departure." (Tr. 10/4/00 at 30).  Admittedly, the Court's statements were not crystal clear and could have confused counsel for the government.  To put the matter at rest, the Court declares, unequivocally, that it has not relied on the comparative conduct or punishments of Mr. Renteria and President Clinton as a factor in deciding that Mr. Renteria's motion for downward departure under U.S.S.G. § 5K2.0 should be granted or in determining the extent of the departure.  This decision has been reinforced by events that occurred subsequent to the October 4, 2000 sentencing hearing.  In January 2001 the independent counsel for the federal government and President Clinton reached an agreement under which the independent counsel agreed to decline, with prejudice, federal prosecution of matters within his authority; and President Clinton admitted to having given false testimony in a civil action in federal court and agreed to the suspension of his license to practice law in the State of Arkansas for a period of five years and to pay a $25,000 fine.  Hence, no criminal charges were filed against President Clinton, he was not indicted, and the independent counsel committed not to pursue charges within his authorization.  Moreover, the President's false testimony had been given in a civil, not a criminal, action and although a federal judge found, by clear and convincing evidence, that President Clinton had given false testimony, no jury has assessed his conduct and certainly has not made a finding of guilt of a criminal offense beyond a reasonable doubt.  Although the language of United States. v. Koon, supra, authorizes a sentencing judge to take into account a virtually limitless set of factors in deciding to depart downward under U.S.S.G § 5K2.0, this Court believes it would be inappropriate to take into account the comparative conduct or punishment of President Clinton and Mr. Renteria.

Court of Appeals for the Tenth Circuit has approved departures of similar magnitude where a combination of factors supports departing downward under U.S.S.G. § 5K2.0. Jones, supra at 496 (10th Cir. 1998) (affirming downward departure reducing base offense level from 13 to 10, reducing sentencing range from 12-18 months imprisonment to 0-6 months imprisonment or probation with home confinement); see also United States v. Leach, No. 95-1219, 1996 WL 91917, at **1 (10th Cir. March 4, 1996) (rejecting argument that sixty percent downward departure was warranted, observing that district court had already departed downward approximately forty percent); United States v. St. Julian, 966 F.2d 564, 570 (10th Cir. 1992) (approving "actual sentences" 73% below "minimum hypothetical sentencing range").  Of the three factors that combine to justify a significant downward departure in this case, the Court believes that the first factor (lack of credit for time held in federal custody) and the third factor (lack of consideration of severity of perjury) each, standing alone, would justify a downward departure under U.S.S.G. §5K2.0.  Combined with each other and with the second factor of post-offense rehabilitation, a large downward departure is not only justified, but also mandated.

***CONCLUSION***.

   The sentence for any crime must "reflect the seriousness of the offense."  18 U.S.C. § 3553(a)(2)(A).  The Court is convinced that the fifteen months imprisonment Mr. Renteria served in this case, No. CR 95-320JP, under his original sentence, plus the three hundred twenty-four days he was jailed in pretrial custody in No. CR 92-486JC, in which a jury found him to be not guilty, and his two years of strict compliance with the terms of supervised release under his

20

original sentence in No. CR 95-320JP satisfy the statutory requirement of 18 U.S.C. §
3553(a)(2)(A).  At the time of the original sentencing hearing in 1996, the Court stated "The
sentence imposed will reflect the sentencing goals of punishment, deterrence, and protection of the
public."  (Tr. 3/6/96 at 19).  Those goals certainly have been achieved.  Mr. Renteria has been duly
punished.  His imprisonment and subsequent supervision by the United States Probation Office for
a period of two years has effectively deterred further serious misconduct and has protected the
public.  Stated differently, the sentence imposed in 1996 worked as Congress and this Court hoped
it would – it dramatically changed Mr. Renteria for the better.  To require Mr. Renteria to return to
prison would serve no useful purpose; instead, it would simply be vindictive.

_____
CHIEF UNITED STATES DISTRICT JUDGE